UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ELILE ADAMS,<br><br>              Petitioner,<br><br>     v.<br><br>BILL ELFO, *et al.*,<br><br>              Respondents. | Case No. C19-1263 JCC-MLP<br><br>REPORT AND RECOMMENDATION |

## I.     INTRODUCTION

Petitioner Elile Adams filed a second amended petition for writ of habeas corpus pursuant to the federal Indian Civil Right Act of 1968 ("ICRA"), 25 U.S.C. §§ 1301-1303, seeking relief from a Nooksack Tribal Court warrant. (Second Am. Pet. (Dkt. # 21).) Respondents Deanna Francis, Betty Leather, Nooksack Indian Tribe, and Nooksack Tribal Court filed a return and a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing Petitioner failed to exhaust tribal court remedies, named improper respondents, and that the Nooksack Tribal Respondents are entitled to sovereign immunity. ("Nooksack Tribe Return" (Dkt. # 25).) Respondents Judge Raymond Dodge and Pro Tem Judge Rajeev Majumdar filed a return, arguing they are improper respondents and are entitled to judicial immunity.

REPORT AND RECOMMENDATION - 1

1  ("Dodge and Majumdar Return" (Dkt. # 28).) Petitioner filed a response and Respondents filed
2  replies. ("Pet.'s Resp." (Dkt. # 29); "Nooksack Tribe Reply" (Dkt. # 33); "Dodge and Majumdar
3  Reply" (Dkt. # 34).) Having considered the parties' submissions, the balance of the record, and
4  the governing law, the Court recommends Petitioner's habeas petition be dismissed without
5  prejudice.

## II.    BACKGROUND

The parties in this matter have a long and contentious history. Petitioner asserts the Nooksack Indian Tribe and Tribal Court have a vendetta against her and her family over their defense of Nooksack tribal members subjected to disenrollment proceedings since at least 2016. (Second Am. Pet. at ¶¶ 12-23.) Respondents assert Petitioner's habeas matter is just one of many cases filed by Petitioner and her counsel against the Nooksack Indian Tribe and its officials in a campaign to undermine the Nooksack Indian Tribe's jurisdiction and sovereignty.[1] (Dodge and Majumdar Return at 2-3; Nooksack Tribe Return at 8.) The subject of the instant action is a Nooksack Tribal Court warrant resulting in Petitioner's arrest and subsequent release on bail. The warrant stems from pending criminal charges regarding Petitioner's alleged child custody interference and contempt of court.

In 2014, the father of Petitioner's child initiated a parenting action against Petitioner in Whatcom County Superior Court. ("Second Adams Decl." (Dkt. # 31) at ¶ 4, Ex. A (Petition for Residential Schedule/Parenting Plan, Case No. 14-5-00085-2).) The Whatcom County Superior Court determined Petitioner should remain the primary residential parent, and the father be

---

[1] Respondents cite to, *inter alia*, *Adams v. Dodge, et al.,* Case No 19-2-01552-37 (Whatcom Sup. Ct.) and *Adams v. Whatcom County, et al.,* Case No. 2:19-cv-01768-JRC (W.D. Wash), which Respondents assert arise out of the same alleged unlawful detention of Petitioner involved in this habeas petition. (Dodge and Majumdar Return at 3.)

REPORT AND RECOMMENDATION - 2

permitted visitation rights. (*Id.*, Ex. C (Judgment and Order Determining Parentage, Case No. 14-5-00085-2).)

On March 17, 2017, Petitioner sought a protection order against the father of her child in the Nooksack Tribal Court. (*Id.*, Ex. D (Temporary Ex Parte Order for Protection, Case. No. 2016-CI-PO-00).) Petitioner asserts that on March 30, 2017, Respondent Nooksack Tribal Court Judge Dodge, *sua sponte*, converted her petition for a protection order into a child custody action ("Nooksack Parenting Action"). (Pet.'s Resp. at 3.) Respondents assert Petitioner initiated the Nooksack Parenting Action herself. (Nooksack Tribe Return at 5.) The Nooksack Parenting Action gave Petitioner primary custody and the father visitation rights. (*Id.*)

In February 2019, Respondent Judge Dodge requested the Nooksack Tribal Police Department conduct an investigation regarding possible custodial interference by Petitioner. (Nooksack Tribe Return, Ex. A at 53 (Police Report).) At the time of the investigation, Petitioner and her child were members of the Nooksack Indian Tribe and living on Nooksack trust land off the Nooksack Indian Tribe Reservation (the "Reservation").[2] (*Id.* at 3; Dodge and Majumdar Return at 4; Second Am. Pet.'s Resp. at 6-7, 33.) As a result of the investigation, Nooksack Tribal Police cited Petitioner with ten counts of interference with child custody for failing to comply with the father's visitation rights. (Nooksack Tribal Return, Ex. A at 57 (Police Report), 62 (Police Citation).)

---

[2] Petitioner subsequently relinquished her Nooksack tribal membership. The parties disagree over when her relinquishment went into effect. Petitioner asserts her and her child relinquished their memberships in April 2019 to obtain citizenship with the Lummi Nation. (Second Am. Pet. at ¶ 33.) Respondents assert that Petitioner's relinquishment was not effective until September 10, 2019 when the Nooksack Tribal Council approved her request. ("Charity Decl." (Dkt. # 25-1), Ex. A. (Nooksack Tribal Council Resolution #ER 19-2).)

In May 2019, Petitioner filed a "Voluntary Non Suit" in the Nooksack Parenting Action, asserting that the Nooksack Indian Tribe lacked a governing body and therefore had no jurisdiction over her or the custody of her child. (Second Adams Decl., Ex. G.) Before receiving a ruling on her pleading, the Nooksack Tribal Court charged Petitioner with four counts of custody interference and one count of contempt of court ("Nooksack Criminal Action"). (Nooksack Tribe Return, Ex. A at 59-61 (Criminal Complaint).)

On July 11, 2019, Petitioner failed to appear at a scheduled hearing in the Nooksack Criminal Action because she was on a Canoe Journey. (*Id.*, Ex. A at 41 (Minute Order); Pet.'s Resp. at 6.) On July 12, 2019, the Nooksack Tribal Court entered an order granting Petitioner seven days from the missed hearing date to appear at the Nooksack Tribal Court and execute a promise to appear for the next hearing. (Nooksack Tribe Return, Ex. A at 41 (Minute Order).) Petitioner did not appear and on July 19, 2019, the Nooksack Tribal Court issued a warrant for her arrest. (*Id.*, Ex. A at 25-26 (Notice of Return on Arrest Warrant).)

On July 30, 2019, Nooksack Tribal Police arrested Petitioner at her residence pursuant to the warrant and booked her into Whatcom County Jail. (*Id.*, Ex A at 29-31 (Police Report); Whatcom County Deputy Sheriff Wendy Jones Decl. (Dkt. # 14) at ¶ 2.) Petitioner posted bail of $500.00 and was released. (Nooksack Tribe Return, Ex A. at 23 (Whatcom County Jail Bail Receipt).) Whatcom County Jail transferred Petitioner's bail to the Nooksack Tribal Court. (*Id.*, Ex. A at 22 (Whatcom County check to Nooksack Tribal Court).) It appears Petitioner has remained out of custody since her release from Whatcom County Jail. (Whatcom County Deputy Sheriff Wendy Jones Decl. at ¶ 7.)

On the same day as Petitioner's arrest, Respondent Judge Dodge denied Petitioner's "Voluntary Non Suit" in the Nooksack Parenting Action on the grounds that (1) it was not served

REPORT AND RECOMMENDATION - 4

1    on all parties; (2) Nooksack Code of Laws does not contain a provision for voluntary non-suits; (3) Petitioner invoked tribal jurisdiction by filing her petition; and (4) voluntary dismissal would be unfair to the parties given the posture of the case. (Second Adams Decl., Ex. H (Order).)

In August 2019, Petitioner and her father filed a tort lawsuit in Whatcom County Superior Court against Respondent Judge Dodge based on Petitioner's arrest in the Nooksack Criminal Action. (*Id.* at ¶ 49.) In response, Respondent Judge Dodge filed a libel counterclaim against Petitioner for statements she made about him to the media. (*Id.* at ¶¶ 50-51.) In October 2019, Petitioner's public defender in the Nooksack Criminal Action moved for disqualification of Respondent Judge Dodge based on the ongoing tort lawsuit. (Nooksack Tribe Return, Ex. A at 15-17 (Amended Motion for Disqualification).) Respondent Judge Dodge recused himself and appointed Pro Tem Judge Majumdar to Petitioner's case. (*Id.*, Ex. A at 10-14 (Notice of Recusal).)

Petitioner also obtained an order for declaratory relief from Whatcom County Superior Court regarding the custody of her child. (Second Adams Decl., Ex. F (Order).) The order declared that Whatcom County Superior Court made the initial custody determination of Petitioner's child and retains exclusive and continuing jurisdiction over the custody plan pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), Chapter 26.27 RCW. (*Id.*)

Petitioner initiated the instant federal habeas matter on August 9, 2019, originally naming the Whatcom County Sheriff and Chief of Corrections as Respondents. (Dkt. # 2.) After Respondents moved to dismiss for failure to state a claim, the parties stipulated to the dismissal of the Whatcom County Respondents. (Dkt. # 19.) On October 18, 2020, Petitioner filed a second amended habeas petition naming the current Respondents. (*See* Second Am. Pet.)

### III.   DISCUSSION

The Nooksack Indian Tribe is a "'distinct, independent political communit[y] … retaining [its] original natural rights' in matters of local self-government." *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 55 (1978). Indian tribes "are not bound by the United States Constitution in the exercise of their powers, including their judicial powers." *Means v. Navajo Nation,* 432 F.3d 924, 930 (9th Cir. 2005). As a result, "tribal proceedings do not afford criminal defendants the same protections as do federal proceedings." *United States v. Percy,* 250 F.3d 720, 725 (9th Cir. 2001). In 1968, Congress utilized its ability to "limit, modify or eliminate the powers of local self-government which the tribes otherwise possess," to pass the Indian Civil Rights Act ("ICRA") to extend to tribes most of the civil protections in the Bill of Rights. *See Santa Clara Pueblo,* 436 U.S. at 56-57 (1978).

Habeas corpus provides the exclusive remedy for tribal members by which enforcement of the ICRA can be obtained in federal court. *See Santa Clara Pueblo,* 436 U.S. at 66 (1978); 25 U.S.C. § 1303 ("The privilege of the writ of habeas corpus shall be available to any person, in a court of the United States, to test the legality of his detention by order of an Indian tribe."). Individuals generally are required to exhaust their claims with the appropriate tribal court before turning to federal court. *See, e.g., Selam v. Warm Springs Tribal Corr. Facility*, 134 F.3d 948, 953 (9th Cir. 1998). Considerations of comity, along with the desire to avoid procedural nightmares, have prompted the Supreme Court to insist that "the federal court stay[ ] its hand until after the Tribal Court has had a full opportunity … to rectify any errors it may have made." *Nat'l Farmers Union Ins. Cos. v. Crow Tribe*, 471 U.S. 845, 857 (1985).

As discussed above, Petitioner filed this federal habeas matter seeking relief from her warrant in the pending Nooksack Criminal Action. Petitioner seeks to challenge her detention on

the ground that the Nooksack Tribal Court lacks jurisdiction over her. Petitioner's jurisdictional arguments are based on her assertion that the Nooksack tribal police lacked jurisdiction to arrest her because she was not on the Reservation at the time of her arrest. (Pet.'s Resp. at 7, 15.) Petitioner also asserts the Nooksack Tribal Court never had subject matter jurisdiction over the custody of her child due to Whatcom County Superior Court's continuing and exclusive jurisdiction pursuant to UCCJEA, and therefore it lacks subject matter jurisdiction over the criminal charges arising from the allegedly invalid Nooksack Parenting Action.[3] (*Id.* at 15 (citing Second Adams Decl., Ex. F (Order Granting Declaratory Relief)).) Petitioner also asserts she was denied adequate notice of the charges against her, denied access to counsel, denied adequate time to mount a defense, and denied a public trial. (Second Am. Pet. at ¶¶ 90-99.)

Respondents argue the habeas petition should be dismissed for lack of exhaustion, improperly named respondents, and various immunities. Having reviewed the record, the Court finds Petitioner's habeas petition is premature as she has not exhausted tribal court remedies regarding the pending underlying criminal matter, and therefore should be dismissed.

**A.   Exhaustion**

As discussed above, individuals are generally required to exhaust their claims with the appropriate tribal court before turning to federal court. Exhaustion is not "required where an assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith, … or where the action is patently violative of express jurisdictional prohibitions, or where

---

[3] Petitioner also appears to suggest the Nooksack Tribal Court lacks jurisdiction over her because the United States does not recognize the Nooksack Tribal Council, and by extension the Nooksack Tribal Court. (Second Am. Pet. at ¶¶ 14-17.) Petitioner's argument is unpersuasive as this district has found that the United States Department of the Interior and the Bureau of Indian Affairs now recognize the Nooksack Tribe as a legitimate tribe. *See Rabang et al., v. Kelly et al.*, Case No. C17-88-JCC (W.D. Wash. 2018) (Dkt. # 166 at 4-5.); *Doucette et al., v. Bernhardt et al., (Zinke)*, Case No. C18-859-TSZ (W.D. Wash. Aug. 13, 2019).

REPORT AND RECOMMENDATION - 7

exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction." *Nat'l Farmers Union Ins.*, 471 U.S. at 857, n.21. Here, Petitioner contends that she is not required to exhaust her tribal remedies because all three exhaustion exceptions apply. (Pet.'s Resp. at 14-17.) The Court will address each exception in turn.

### 1. Jurisdiction

Petitioner asserts that it is plain that Nooksack Tribal Court is lacking jurisdiction over the Nooksack Criminal Action. (Pet.'s Resp. at 14-15.) Petitioner first argues the Nooksack Tribal Court plainly lacks jurisdiction because her arrest occurred on Nooksack Tribe allotted land outside the exterior boundaries of the Reservation. (Pet.'s Resp. at 14-15.) Similarly, Petitioner argues that because she was not on the Reservation, the tribal law enforcement officers only had jurisdiction to detain her, not to arrest her. (*Id*. at 15.) Respondents argue tribal jurisdiction extends to property held in trust for the tribe outside its reservation, including allotments. (Nooksack Tribe Reply at 2 (citing 18 U.S.C. § 1151(c)).) The Court finds Petitioner's conclusory assertions that jurisdiction is plainly lacking because she was not within the bounds of the Reservation at the time of her arrest are insufficient to show there is no plausible claim of an absence of jurisdiction, especially given the record. (*See* Nooksack Tribe Return., Ex. A at 29 (Police Report stating Petitioner's address "is located on Nooksack tribal trust land, and is within the jurisdiction of the Nooksack Tribal Police".)

Second, Petitioner argues the Nooksack Tribal Court never had subject matter jurisdiction over the Nooksack Parenting Action because the Whatcom County Superior Court had continuing jurisdiction of the custody of Petitioner's child from the first parenting plan pursuant to the UCCJEA. (Pet.'s Resp. at 15.) Petitioner asserts that because the Nooksack Tribal Court lacks jurisdiction over that action, it lacks jurisdiction over the Nooksack Criminal Action arising

REPORT AND RECOMMENDATION - 8

from it. (*Id.*) Respondents argue that Whatcom County Superior Court cannot divest the Nooksack Tribal Court of its jurisdiction under federal law. (Nooksack Tribe Response at 2-3 (citing *Iron Crow v. Ogallala Sioux Tribe*, 129 F. Supp. 15 (1955) *aff'd* 231 F.2d 89 (8th Cir. 1956)).) Respondents further assert that although the Whatcom County Superior Court relied on UCCJEA in asserting jurisdiction, the Nooksack Indian Tribe is not a party to that UCCJEA and therefore the tribe retains its inherent adjudicatory jurisdiction. (*Id.* at 3.)

The Court finds the considerations of tribal self-governance constrain the Court's ability to grant Petitioner relief of her unexhausted claims, even if her claims may be meritorious in other contexts. Petitioner's argument that the Nooksack Tribal Court lacks jurisdiction over the Nooksack Parenting Action consists of one paragraph that cites to no authority specifically addressing the application of UCCJEA to the Nooksack Tribal Court. Similarly, Respondents merely cite to Congress' exclusive authority over Indian tribes to establish jurisdiction but do not directly address the application of the UCCJEA. The Court declines to intervene and find that the Nooksack Tribal Court lacks custody over Petitioner's child, and by extension lacks jurisdiction over Petitioner's pending criminal action, before the tribal court itself has had an opportunity to hear this jurisdictional argument.

        2.        *Harassment and Bad Faith*

Petitioner argues Respondent Judge Dodge is acting in bad faith and therefore the Nooksack Tribal Court is biased. Petitioner cites to Responded Judge Dodge's alleged conversion of Petitioner's petition for protection into the Nooksack Parenting Action, the number of hearings held in both the criminal and parenting actions, and Petitioner's alleged denial of counsel. (Pet.'s Resp. at 16.) Petitioner also references criticisms of the Nooksack Tribal Court from the National American Indian Court Judges Association, Washington State Bar

Association, and Department of Interior. (Pet.'s Resp. at 16-17 (citing Galanda Decl., Exs. M, N, O).)

It is apparent from Petitioner's second amended petition that there are numerous actions by the Nooksack Indian Tribe that Petitioner takes issue with. (*See* Second Am. Pet. at ¶¶ 12-23 (discussing the disenrollment of tribal members and the lack of a legitimate governing body of the Nooksack Indian Tribe), 24-30 (discussing Nooksack Parenting Action), 46-47 (discussing Petitioner's lawsuit against Respondent Judge Dodge), 55-83 (discussing the sequence of events of Petitioner's arrest).) However, the Court focuses on the circumstances surrounding Petitioner's pending criminal charges and resulting detention, which is at issue in this habeas matter, rather than the past turmoil between the parties.

As discussed above, Respondent Judge Dodge requested the tribal police investigate Petitioner for child custody interference regarding that tribal parenting plan. As a result, Petitioner was criminally charged. Petitioner appeared before Respondent Judge Dodge numerous times for hearings in both her tribal parenting and criminal cases.[4] Respondent Judge Dodge issued an arrest warrant for Petitioner when she missed a court hearing because she was on a Canoe Journey. (*Id.* at ¶ 19.)

Although Petitioner allegations may raise suspicion regarding the tribal criminal and parenting actions, the Court concludes that it does not rise to the level of bad faith or harassment. First, Petitioner's argument that Respondent Judge Dodge is acting in bad faith is unpersuasive as he recused himself from the ongoing criminal matter. Second, it appears the criminal charges were brought with a reasonable expectation of obtaining a conviction. Police reports show that from January 12, 2019 to February 20, 2019, Petitioner failed to exchange custody of her child

---

[4] Petitioner alleges she was compelled to appear before Respondent Judge Dodge almost monthly between 2017 and 2019. (Pet.'s Resp. at 4, n.20.)

REPORT AND RECOMMENDATION - 10

pursuant to the Nooksack Parenting Action, in violation of Nooksack Code of Laws, Sections 20.03.160, 20.11.020. (Nooksack Tribe Return, Ex. A at 53-58.) Police reports also show Petitioner knew she was required to exchange custody but failed to do so for ten out of twelve planned visitations in a one-month period. (*Id.*)

Regardless of any alleged vendetta of Respondent Judge Dodge or the Nooksack Indian Tribe, tribal police found probable cause to arrest Petitioner for violating NTC 20.03.160. (*Id.*, Ex. A at 57.) Petitioner has not been harassed with multiple criminal cases, but instead has only been charged in the one pending case. Therefore, it appears that this habeas action would unduly interfere with the tribal court criminal proceeding and the Court should abstain from deciding these claims.

### 3. Futility

Lastly, Petitioner argues any attempt at exhaustion in the tribal courts would be futile. However, the Court finds that because Petitioner is a pretrial detainee in the Nooksack Criminal Action, she can raise her jurisdictional arguments targeting the validity of that action in several ways. As Respondents note, Petitioner could move for acquittal on the grounds the Nooksack Parenting Action is void or could move to strike the warrant and return of bail. (Nooksack Tribe Return at 9, n.32 (citing NTC §§ 10.07.190, 10.07.200).) Petitioner could also seek tribal writ of habeas corpus relief or appeal to the tribal appellate court. (*See* "Roche Decl." (Dkt. # 13), Ex. 4 (Tribal Court System and Court Rules).)

Petitioner raises several arguments challenging the viability of these tribal court remedies. First, Petitioner argues she cannot obtain relief from the Nooksack Tribal Court in the pending criminal matter because Respondent Judge Dodge is acting in bad faith and therefore the tribal court is not a fair and neutral forum. (Pet.'s Resp. at 15-17.) Specifically, Petitioner argues

REPORT AND RECOMMENDATION - 11

Respondent Judge Dodge has acted in bad faith because of his alleged conversion of her petition for protection into the Nooksack Parenting Action, Petitioner's numerous hearings in both the parenting and criminal actions, and his alleged denial of Petitioner's request for counsel. (*Id.* at 16.) As discussed above, Respondent Judge Dodge recused himself from the Nooksack Tribal Action and the Court finds Petitioner's argument fails to rise to the level of bad faith.

Petitioner also argues she has no practical way to seek tribal habeas relief because she has been denied her right to counsel of her choosing. (Pet.'s Resp. 8, 16.) In support of her argument, Petitioner alleges that on October 9, 2019, Mr. Galanda, Petitioner's counsel in the instant habeas matter, attempted to attend a hearing on behalf of Petitioner in the Nooksack Parenting Action, but was not allowed to enter the courthouse. (*Id.* at 16 (citing "Galanda Decl." (Dkt. # 30)).) Petitioner also cites to Mr. Galanda's rejected filings of notice of association of counsel in both the Nooksack Parenting Action and Nooksack Criminal Action. (*Id.* (citing Galanda Decl., Exs. J, K).)

The Nooksack Parenting Action is not before the Court, and therefore Petitioner's right to counsel in that matter has no bearing on Petitioner's federal habeas petition. With regard to Mr. Galanda exclusion from the Nooksack Criminal Action, it appears from the 2019 rejected notice of association of counsel that he is barred from practicing in the Nooksack Tribal Court.[5] (Galanda Decl., Exs. J, K.) Petitioner asserts in a conclusory fashion that Mr. Galanda has been wrongfully excluded from the tribal courthouse, citing to a 2016 Tribal Court of Appeals order reinstating Mr. Galanda's ability to practice in the Nooksack Tribal Court pending review before

---

[5] To the extent Petitioner is asserting she has been outright denied counsel in the Nooksack Criminal Action, such argument fails as Petitioner is represented by a public defender. (Second Am. Pet. at ¶ 36; Pet.'s Resp. at 6; Second Adams Decl. at ¶ 19 ("On July 11, 2019, my public defender Matthew Deming appeared before Respondent Dodge for me.").)

REPORT AND RECOMMENDATION - 12

the Nooksack Tribal Court of his claims that his due process rights have been infringed on by being disbarred. (Pet.'s Resp. at 8 (citing Galanda Decl. Ex. C).) It is not clear from the appellate order whether the Nooksack Tribal Court reviewed and affirmed Mr. Galanda's disbarment, or if review is still pending. Regardless, Petitioner's assertions are insufficient to show she unable to pursue tribal habeas relief through a different attorney or as a pro se litigant.

Lastly, Petitioner argues that seeking relief from the Nooksack Court of Appeals would be futile because it has been enjoined and there is no indication that it has become operational.[6] (Second Am. Pet. at ¶ 101; Pet.'s Resp. at 17.) To support her assertion, Petitioner cites to a 2016 Nooksack Tribal Court order finding the Northwest Intertribal Courts System ("NICS") and any NICS-engaged appellate panel lack authorization to (1) accept filing from third parties rather than the Nooksack Indian Tribe Clerk; (2) assert original jurisdiction or issue orders as a court of original jurisdiction in Nooksack Indian Tribe matters; or (3) to issue sanctions against Nooksack Indian Tribe officers acting in his or her official capacity. (Pet.'s Resp. at 17 (citing Galanda Decl., Ex. L at 5-14).) Petitioner also cites to the Nooksack Tribal Court website, asserting the lack of a listing for a tribal appellate court proves such court is defunct. (*Id.* at 17.) In response, Respondents cite to the Nooksack Tribal Court System and Court Rules, which contain procedures regarding how to initiate a tribal appeal. (Roche Decl., Ex. 4 (Tribal Court System and Court Rules).)

While the order cited by Petitioner does appear to put limitations on the tribal appellate court, the Court does not agree with Petitioner's assertion that it establishes the tribal appellate court has been fully enjoined. Rather, it appears to limit the tribal appellate court's ability to

---

[6] Petitioner also argues that even if the Nooksack Tribal Appellate Court is operational, it too is unfair and biased like the Nooksack Tribal Court. (Pet.'s Resp. at 15.) Petitioner provides no evidence in support of this conclusory assertion.

REPORT AND RECOMMENDATION - 13

assert original jurisdiction over Nooksack Indian Tribe matters. The order explicitly states it is not enjoining the attorneys or judges of the appellate tribunal. (Galanda Decl, Ex. L at 7.) Similarly, the Court is not persuaded that the tribal appellate court is nonoperational based on the lack of listing on the tribal website. Regardless, even if the tribal appellate court is enjoined, Petitioner still has other tribal court remedies, discussed above, that are available.

In sum, Petitioner has multiple opportunities in the tribal courts to challenge her detention. The Court is cognizant of Petitioner's apparent frustration with the Nooksack Tribal Court, and the Nooksack Indian Tribe itself, but her conclusory assertions that she cannot seek relief because there is a vendetta against her, without more, is not enough for the Court to abandon the considerations of comity and insert itself into the ongoing tribal criminal proceedings. Nothing in this finding precludes Petitioner from seeking federal habeas relief in the future should she attempt to utilize the available tribal remedies without success. Accordingly, Petitioner's habeas petition should be dismissed for failure to exhaust tribal court remedies.[7]

### B.  Alternative Grounds

Respondents also present alternative grounds as to why Petitioner's habeas petition should be dismissed. Respondents Nooksack Indian Tribe and Nooksack Indian Court argue they are entitled to sovereign immunity and therefore should be dismissed from this action. (Nooksack Return at 10.) Respondents Leathers and Francis argue they should be dismissed from this action because as court clerks, they do not have control over Petitioner's detention and

---

[7] "Habeas claims brought under the Indian Civil Rights Act, 25 U.S.C. § 1303, are most similar to habeas actions arising under 28 U.S.C. § 2241," § 1303's "federal law analogue." *Kelsey v. Pope*, 809 F.3d 849, 854 (6th Cir. 2016), *cert. denied sub nom. Kelsey v. Bailey*, ⸺ U.S. ⸺, 137 S.Ct. 183, 196 L.Ed.2d 150 (2016). Because the habeas petition is most similar to those habeas actions arising under 28 U.S.C. § 2241, a certificate of appealability is not included.

REPORT AND RECOMMENDATION - 14

therefore are not her custodians. (*Id.* at 11.) Respondents Judge Dodge and Pro Tem Judge Majumdar argue they are entitled to judicial immunity and should therefore be dismissed. (Dodge and Majumdar Return at 10-13.) Lastly, Respondent Judge Dodge argues he should be dismissed from this action because he recused himself from the Nooksack Criminal Action and therefore lacks power to release Petitioner from her detention. (*Id.* at 10.) Because the Court finds Petitioner's habeas petition should be dismissed for failure to exhaust tribal court remedies, the Court need not address Respondents' alternative grounds.

### C. Request for Order to Show Cause Regarding Sanctions

Respondents Judge Dodge and Pro Tem Judge Majumdar request the Court order Petitioner to show cause why sanctions should not be imposed on her for bringing this habeas petition. (Respondents Dodge and Majumdar Return at 13-15.) Although habeas relief is not warranted at this time, the Court declines Respondents Judge Dodge and Pro Tem Judge Mujamdar's invitation to impose sanctions.

### IV.    CONCLUSION

The Court recommends Respondents' Returns should be GRANTED (dkt. ## 25, 28) and Petitioner's habeas petition be DISMISSED without prejudice for the foregoing reasons. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed.  Responses to objections may be filed within

REPORT AND RECOMMENDATION - 15

**fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **March 20, 2020**.

The Clerk is directed to send copies of this Report and Recommendation to the parties and to the Honorable John C. Coughenour.

Dated this 3rd day of March, 2020.

MICHELLE L. PETERSON
United States Magistrate Judge

REPORT AND RECOMMENDATION - 16