UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ELILE ADAMS,

          Petitioner,

   v.

BILL ELFO, *et al.*,

          Respondents.

Case No. C19-1263-JCC-MLP

REPORT AND RECOMMENDATION

## I.    INTRODUCTION

This matter is before the Court on the Honorable John C. Coughenor's Order remanding this matter to the Undersigned for further consideration of whether Petitioner has raised a claim that the Nooksack Tribal Court plainly lacked jurisdiction over her arrest and to address Respondents' alternative grounds for dismissal. (Order (Dkt. # 43).) Having considered the parties' submissions, the balance of the record, and the governing law, the Court recommends Petitioner's habeas petition be DISMISSED for failure to exhaust tribal court remedies.

## II.    PROCEDURAL BACKGROUND

Petitioner Elile Adams filed a second amended petition for writ of habeas corpus pursuant to the federal Indian Civil Right Act of 1968 ("ICRA"), 25 U.S.C. §§ 1301-1303,

REPORT AND RECOMMENDATION - 1

seeking relief from a Nooksack Tribal Court warrant. (Second Am. Pet. (Dkt. # 21).) Respondents Deanna Francis, Betty Leather, Nooksack Indian Tribe, and Nooksack Tribal Court filed a return and a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing Petitioner failed to exhaust tribal court remedies, named improper respondents, and that the Nooksack Tribal Respondents are entitled to tribal sovereign immunity. (Nooksack Tribe Return (Dkt. # 25).) Respondents Judge Raymond Dodge and Pro Tem Judge Rajeev Majumdar filed a return, arguing they are improperly named respondents and are entitled to judicial immunity. (Dodge and Majumdar Return (Dkt. # 28).) Petitioner filed a response and Respondents filed replies. (Pet.'s Resp. (Dkt. # 29); Nooksack Tribe Reply (Dkt. # 33); Dodge and Majumdar Reply (Dkt. # 34).)

The Undersigned submitted a Report and Recommendation recommending Petitioner's second amended petition be dismissed for failure to exhaust tribal court remedies. (Report and Recommendation (Dkt. # 35).) Petitioner filed objections to the Report and Recommendation, primarily rearguing the claims in her petition.[1] (Obj. (Dkt. # 36).) Petitioner also submitted further evidence in support of her arguments. (Second Galanda Decl. (Dkt. # 37), Exs. 1-10.) Respondents Francis, Leathers, Nooksack Indian Tribe, and Nooksack Tribal Court submitted a response (dkt. # 38), Respondents Judge Dodge and Pro Tem Judge Majumdar filed a response (dkt. # 39), and Petitioner submitted a reply (dkt. # 40).

Judge Coughenour issued an Order adopting the Report and Recommendation in part and rejecting it in part. (Order.) The Order found Petitioner may have given rise to a plausible claim that the Nooksack Tribal Court lacked jurisdiction over her based on her assertion that she was

---

[1] Petitioner fashioned her pleading as a "Motion for Reconsideration or, Alternatively, Objections to Magistrate's Report and Recommendation." Judge Coughenour construed Petitioner's pleading as objections.

REPORT AND RECOMMENDATION - 2

arrested on allotted land outside the Nooksack Tribal reservation.[2] (*Id.* at 4.) Judge Coughenour's Order noted the legal authority and evidence submitted with Petitioner's objections. (*Id.* at 4.) Judge Coughenour remanded this matter for further consideration of whether the Nooksack Tribal Court lacked jurisdiction over Petitioner at the time of her arrest and for consideration of Respondents' alternative grounds for dismissal.

### III.   FACTUAL BACKGROUND

The full set of facts regarding this matter are set forth in the Report and Recommendation and will not be repeated herein. Relevant to the question of jurisdiction are the facts regarding Petitioner's arrest, summarized below.

After conducting an investigation, Nooksack Tribal law enforcement cited Petitioner with ten counts of interference with child custody for failing to comply with a Nooksack Tribal Court Parenting Plan. (Nooksack Tribal Return, Ex. A at 57 (Tribal Police Report), 62 (Police Citation).) As a result, the Nooksack Tribal Court charged Petitioner with four counts of custody interference and one count of contempt of court ("Nooksack Criminal Action"). (*Id.*, Ex. A at 59-61 (Criminal Complaint).) On July 11, 2019, Petitioner failed to appear at a scheduled hearing in the Nooksack Criminal Action. (*Id.*, Ex. A at 41 (Minute Order).) After failing to execute a promise to appear for the next hearing, the Nooksack Tribal Court issued a warrant for her arrest. (*Id.*, Ex. A at 25-26 (Notice of Return on Arrest Warrant), 41 (Minute Order).)

On July 30, 2019, Nooksack Tribal Police arrested Petitioner at her residence pursuant to the warrant and booked her into the Whatcom County Jail. (Nooksack Tribe Return, Ex A at 29-31 (Police Report); Whatcom County Deputy Sheriff Wendy Jones Decl. (Dkt. # 14) at ¶ 2.)

---

[2] The original Report and Recommendation misstated the standard for the jurisdictional exception to exhaustion, stating Petitioner's assertions that jurisdiction is lacking were insufficient to show there is no plausible claim of an absence of jurisdiction. The correct standard is whether the tribal court plainly lacks jurisdiction, as discussed below.

1  Authorities released Petitioner after she posted bail of $500.00. (Nooksack Tribe Return, Ex A.
2  at 23 (Whatcom County Jail Bail Receipt).) The Whatcom County Jail subsequently transferred
3  Petitioner's bail to the Nooksack Tribal Court. (*Id*., Ex. A at 22 (Whatcom County check to
4  Nooksack Tribal Court).) It appears Petitioner has remained out of custody since her release.
5  (Whatcom County Deputy Sheriff Wendy Jones Decl. at ¶ 7.)

## IV.   DISCUSSION

### A.   Legal Standards

Habeas corpus provides the exclusive remedy for tribal members by which enforcement of the ICRA can be obtained in federal court. *See Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 66 (1978); 25 U.S.C. § 1303 ("The privilege of the writ of habeas corpus shall be available to any person, in a court of the United States, to test the legality of his detention by order of an Indian tribe."). Individuals generally are required to exhaust their claims with the appropriate tribal court before turning to federal court. *See, e.g., Selam v. Warm Springs Tribal Corr. Facility*, 134 F.3d 948, 953 (9th Cir. 1998). Considerations of comity, along with the desire to avoid procedural nightmares, have prompted the Supreme Court to insist that "the federal court stay[ ] its hand until after the Tribal Court has had a full opportunity … to rectify any errors it may have made." *Nat'l Farmers Union Ins. Cos. v. Crow Tribe*, 471 U.S. 845, 857 (1985). Exhaustion is not "required where an assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith, … or where the action is patently violative of express jurisdictional prohibitions, or where exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction." *Id.* at 857 n.21.

B.      **Nooksack Tribal Court's Jurisdiction**

Petitioner initially asserted that all three exceptions to exhaustion applied in this action and therefore she was not required to exhaust her tribal court remedies. (Pet.'s Resp. at 14-17.) Judge Coughenour's Order overruled Petitioner's assertions that she lacked the opportunity to exhaust her tribal court remedies and that Respondents harassed her or acted in bad faith. (Order at 3-5.). Thus, the only exception to consider is whether the Nooksack Tribal Court plainly lacked jurisdiction over Petitioner at the time of her arrest. *See Boozer v. Wilder*, 381 F.3d 931, 935 (9th Cir. 2004).

Petitioner asserts the Nooksack Tribal Court plainly lacked jurisdiction over her because she was arrested on off-reservation allotted lands. (Pet.'s Resp. at 14-15.) In Petitioner's initial response, she asserted she was "arrested at '7094 Mission Road Apartment #4 in Everson, WA'— which is Nooksack allotted — not "tribal" or on-reservation — land and, in any event, is **not** located on within the exterior boundaries of the Nooksack Indian Reservation." (*Id*. (emphasis in original).) In support of her assertion, Petitioner submitted a copy of the "Title Status Report regarding Tract Number T3915-C in Whatcom County Washington."[3] (Galanda Decl. at ¶ 22, Ex. R.) Petitioner further argued that because her arrest did not arise on the reservation, Nooksack Tribal law enforcement lacked jurisdiction to arrest her. (Pet.'s Resp. at 15.)

The Court previously considered Petitioner's assertion that the Nooksack Tribal Court lacked jurisdiction because she was arrested on off-reservation allotted lands. The Court found Petitioner's brief assertion insufficient, especially in light of the Nooksack Tribal police report

---

[3] Petitioner cited to Exhibit Q of Mr. Galanda's First Declaration (dkt. # 30-17) that is a copy of a Nooksack Indian Tribe Order on Motion to Enforce Contempt Order from August 2016. This order does not discuss Petitioner's residence or whether the Nooksack Tribal Court has jurisdiction over that land. The Court assumes Petitioner intended to cite to Exhibit R.

REPORT AND RECOMMENDATION - 5

regarding her arrest. (*See* Nooksack Tribe Return, Ex. A at 29 (Police Report stating Petitioner's address "is located on Nooksack tribal trust land, and is within the jurisdiction of the Nooksack Tribal Police").) Although Petitioner submitted a copy of the Title Status Report for Tract Number T3915, she did little in the way of establishing that the Nooksack Tribal Court plainly lacked jurisdiction.

In Petitioner's objections to the Report and Recommendation, she reasserted her claim that because she was off-reservation when arrested, tribal jurisdiction was lacking. (Obj. at 6.) In support of her objections, Petitioner submitted, *inter alia*, the following additional evidence: (1) a copy of a Bureau of Indian Affairs Nooksack Reservation parcel map; (2) a copy of a United States Census Bureau map of Nooksack Reservation and Off-Reservation Trust Land; (3) a copy of a United States Department of the Interior Bureau of Indian Affairs Title Status Report; (4) a copy of a February 8, 1957 letter to the Whatcom County Assessor from the United States Department of Interior Bureau of Indian Affairs; and (5) a copy of a letter dated July 2, 1958 to Whatcom County Assessor from the United States Department of Interior Bureau of Indian Affairs. (Second Galanda Decl., Exs. 1-5.) Based on Petitioner's submissions, it appears her residence is located on off-reservation allotted lands. However, this does not end the Court's analysis. The next inquiry is whether the Nooksack Tribal Court had jurisdiction over that land.

Although not presented by Petitioner, the Court finds a brief background regarding tribal jurisdiction in Washington informative. In 1953, Congress enacted Public Law 280 to permit states to assume jurisdiction over Indian country.[4] Pub.L. No. 280, 67 Stat. 588 (codified as

---

[4] 18 U.S.C. § 1151 defines Indian country for purposes of federal jurisdiction: "'Indian country', as used in this chapter, means (a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or

REPORT AND RECOMMENDATION - 6

amended at 18 U.S.C. § 1162; 25 U.S.C. §§ 1321-1326; 28 U.S.C. § 1360) (1953). Public Law 280 gave Washington consent to assume this jurisdiction by statute and/or amendment of its state constitution. *Washington v. Confederated Bands & Tribes of Yakima Indian Nation,* 439 U.S. 463, 471-74 (1979); *In re Estate of Cross,* 126 Wash.2d 43, 47 (1995). In 1963, Washington amended RCW 37.12 to assert civil and criminal jurisdiction over Indian country, with exceptions. RCW 37.12.010 provides:

> The State of Washington hereby obligates and binds itself to assume criminal and civil jurisdiction over Indians and Indian territory, reservations, country, and lands within this state in accordance with [Public Law 280], but such assumption of jurisdiction shall not apply to Indians when on their tribal lands or allotted lands within an established Indian reservation and held in trust by the United States or subject to a restriction against alienation imposed by the United States, unless the provisions of RCW 37.12.021 have been invoked except for the following:
>
> (1) Compulsory school attendance;
>
> (2) Public assistance;
>
> (3) Domestic relations;
>
> (4) Mental illness;
>
> (5) Juvenile delinquency;
>
> 6) Adoption proceedings;
>
> (7) Dependent children; and
>
> (8) Operation of motor vehicles upon the public streets, alleys, roads and highways: PROVIDED FURTHER, That Indian tribes that petitioned for, were granted and became subject to state jurisdiction pursuant to this chapter on or before March 13, 1963 shall remain subject to state civil and criminal jurisdiction as if *chapter 36, Laws of 1963 had not been enacted.

---

without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same."

REPORT AND RECOMMENDATION - 7

In 1963, the Attorney General's Office issued an opinion, AGO 63-64 No. 68, addressing the question of whether the jurisdiction assumed by the state pursuant to RCW 37.12 is exclusive or concurrent with tribal jurisdiction. The Attorney General's Office opined:

> … the state has exclusive criminal and civil jurisdiction over (1) all Indians and Indian territory, except Indians on their tribal lands or allotted lands within the reservation and held in trust by the United States; (2) the eight areas specified in the 1963 law, regardless of the ownership of any land involved; and (3) the nine tribes and reservations already under state jurisdiction by virtue of a governor's proclamation under the provisions of chapter 37.12 RCW.

AGO 63-64 No. 68 at 15.

Petitioner cites RCW 37.12.010, AGO 63-64 No. 68, *State v. Cooper*, 130 Wn.2d 770 (1996), *State v. Clark*, 178 Wn.2d 19 (Wash. 2013), and *State v. Comenout*, 173 Wn.2d 235 (Wash. 2011) in support of her assertion that the Nooksack Tribal Court lacked jurisdiction. (Obj. at 6.) In *Cooper*, a Nooksack Indian Tribe member committed a crime on property held in trust by the United States as an Indian allotment outside the Nooksack Reservation. 130 Wn.2d at 772. The Court found that pursuant to RCW 37.12.010, the state assumed full nonconsensual civil and criminal jurisdiction over all Indian county outside the reservation, including allotted or trust lands, and therefore the state had jurisdiction over the land where the crime was committed. *Id.* at 775-76.

In *Clark*, a member of an Indian tribe committed a crime on fee land within an Indian reservation and the state issued and executed a state warrant on the suspect's residence that was located on tribal trust land within the borders of the reservation. 178 Wash.2d at 22. The court found that pursuant to RCW 37.12.010, the state has jurisdiction over crimes committed on fee lands within the borders of a reservation and on trust or allotment lands outside reservation borders, and therefore the state had jurisdiction over the crime. *Id.* at 25. In distinguishing case law raised by the petitioner, the court noted that "unlike crimes committed off-reservation, the

REPORT AND RECOMMENDATION - 8

1    State does not have exclusive jurisdiction over crimes by Indians occurring on their

2    reservations." *Id.* at 30. The court found the tribe and state shared concurrent criminal

3    jurisdiction over the instant crime because it occurred on the reservation. *Id.*

4    In *Comenout*, members of an Indian tribe sold cigarettes without a license at a store

5    located on trust allotment land outside the reservation. 173 Wash.2d at 236. The court found the

6    state had criminal jurisdiction over the tribal members because the state assumed full

7    nonconsensual criminal jurisdiction over all Indian country outside established Indian

8    reservations, citing RCW 37.12.010 and *Cooper*. *Id.* at 238-39.

9    The Nooksack Tribal Respondents argue Petitioner misreads RCW 37.12.010 and

10   *Cooper*. (Dkt. # 38 at 2.) They argue both authorities address whether the state has jurisdiction

11   over off-reservation allotted lands but are silent as to whether tribal courts also have concurrent

12   jurisdiction. (*Id.* at 2-3.) They therefore assert that neither RCW 37.12.010 or the case law cited

13   by Petitioner divests the Nooksack Tribal Court of jurisdiction over her arrest. (*Id.* at 3.) The

14   Nooksack Tribal Respondents further assert that it is controlling precedent in this circuit that

15   Public Law 280 does not divest tribal courts of jurisdiction, citing *Native Village of Venetie IRA*

16   *Council v. Alaska*, 944 F.2d 548 (9th Cir. 1992). The Nooksack Tribal Respondents argue the

17   Ninth Circuit has found Public Law 280 was intended to supplement tribal institutions rather

18   than supplant them. *Id.* In *Venetie*, Alaska native villages and members brought an action to

19   compel the state of Alaska to recognize tribal court adoptions under the Indian Child Welfare

20   Act. The court found Public Law 280 and the Indian Child Welfare Act did not prevent the

21   native villages from exercising concurrent jurisdiction with the state. *Id.* at 562.

22   Petitioner asserts *Venetie* is inapposite because it involved the Indian Child Welfare Act

23   that is not at issue in this matter and that unlike Washington, Public Law 280 mandatorily

REPORT AND RECOMMENDATION - 9

conferred jurisdiction over Indian country to Alaska. (Dkt. # 40 at 2-3.) Petitioner also notes the *Venetie* court deferred to Attorney Generals in determining whether state jurisdiction was exclusive. (*Id.* at 3 n.4.)

In the instant matter, the parties do not dispute that the state had jurisdiction over the land where Petitioner was arrested.[5] Rather, the dispute is whether the Nooksack Tribal Court could also exercise jurisdiction. Determining tribal court jurisdiction is not an easy undertaking. *Stock W., Inc. v. Confederated Tribes of the Colville Reservation,* 873 F.2d 1221, 1228 (9th Cir. 1989) ("There is no simple test for determining whether tribal court jurisdiction exists."). In the context of a habeas exhaustion analysis, however, it is unnecessary for the Court to determine whether tribal jurisdiction exists. The Court need only determine if tribal jurisdiction is plainly lacking. If not, the exception to exhaustion does not apply. *Boozer,* 381 at 935 n.3 .

Although Petitioner asserts the AGO 63-64 No. 68 "makes plain" that the state has exclusive jurisdiction (dkt. # 40 at 2), the Court finds the cited opinion insufficient to establish tribal jurisdiction is plainly lacking. The opinion acknowledged that the exact jurisdiction of tribes was undefined and further acknowledged that a legal determination of tribal jurisdiction could not be resolved through the opinion. AGO 63-64 No. 68 at 14, 15 ("… a legal determination of the exact nature and extent of 'inherent sovereignty' or 'inherent authority' presently possessed by an Indian tribe within the state of Washington in view of the 1963 legislation for purposes of internal self-government is a federal question which cannot be resolved by the attorney general of the state of Washington. Any authoritative ruling in this area must be made by the Department of Interior or ultimately by the United States Supreme Court"). Indeed, courts are not bound by Attorney

---

[5] Respondents Judge Dodge and Pro Tem Judge Majumdar did not specifically respond to Petitioner's jurisdictional argument other than to assert Petitioner's bare claim that the Nooksack Tribal Court plainly lacks jurisdiction is insufficient. (Dkt. # 39 at 4.)

REPORT AND RECOMMENDATION - 10

General opinions. *Skagit County Pub. Hosp. Dist. No. 304 v. Skagit County Pub. Hosp. Dist. No. 1*, 177 Wash.2d 718, 725 (2013); *Cedar Shake and Shingle Bureau v. City of Los Angeles,* 997 F.2d 620, 625 (9th Cir. 1993).

The case law cited by Petitioner is more persuasive. However, despite the language in these cases, it still appears there is room for argument that there is concurrent tribal jurisdiction, as indicated by the Nooksack Tribal Court's apparent belief that it has jurisdiction over the lands at issue. The cases make clear that the state has jurisdiction over off-reservation allotted lands, and imply that the state has exclusive jurisdiction, but Petitioner has not cited any case definitively determining that concurrent Nooksack Indian Tribe jurisdiction is lacking over these lands. Thus, while it is plainly clear that the state has jurisdiction, the same cannot be said that concurrent tribal jurisdiction is lacking. Accordingly, the Court finds the plainly lacking jurisdiction exception to exhaustion does not apply.

The Court further finds exhaustion is required. Petitioner's action asks the federal court to insert itself into the Nooksack Tribal Court's criminal system, find it plainly lacks jurisdiction over Petitioner, and grant her relief from the tribal warrant before Petitioner has even raised this issue with the Nooksack Tribal Court. Considerations of comity warrant dismissal of this matter to allow the Nooksack Tribal Court a full opportunity to determine the existence and extent of its own jurisdiction in the first instance and rectify any errors it may have made before the federal court takes action. The exhaustion requirement gives way only where the "tribal courts offer no adequate remedy." *Jeffredo v. Macarro*, 590 F.3d 751, 756 (9th Cir. 2009). Here, Petitioner has tribal court remedies available to her to raise her jurisdictional argument and she should be required to exhaust those remedies before seeking federal habeas relief. As noted in the previous

Report and Recommendation, Petitioner is not precluded from pursuing a federal habeas petition once she has exhausted her tribal court remedies.

### C. Alternative Grounds for Dismissal

As noted above, Judge Coughenour's Order also remanded this matter for consideration of Respondents' alternative grounds for dismissal. The Court will address each ground in turn.

#### 1. *Proper Respondents*

"The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'" *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (quoting 28 U.S.C. § 2242). "[T]here is generally only one proper respondent to a given prisoner's habeas petition." *Id.* "[T]he default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Id.* at 435. Where the petitioner challenges a form of "custody" other than present physical confinement, the petitioner may name as respondent the entity or person who exercises legal control with respect to the challenged "custody." *Id.* at 438.

#### 2. *Nooksack Indian Tribe*

Respondent Nooksack Indian Tribe argues it is not a properly named respondent because it is entitled to tribal sovereign immunity. (Nooksack Tribe Return at 10.) Petitioner appears to concede that the Nooksack Indian Tribe is not a proper respondent. (Pet.'s Resp. at 11 ("… to the extent that Respondents submit that the Tribe, as an institution, should be dismissed, Ms. Adams is fine with that—provided someone she has named gives her the unconditional freedom she seeks.").)

As a matter of law, Indian tribes are not subject to suit unless a tribe waives its sovereign

immunity or Congress expressly authorizes the action. *Kiowa Tribe of Oklahoma v. Manuf. Technologies, Inc.,* 523 U.S. 751, 754 (1998). A waiver of immunity must be expressed unequivocally and cannot be implied. *Santa Clara Pueblo,* 436 U.S. at 58. "An application for writ of habeas corpus is never viewed as a suit against the sovereign," and "§ 1303 does not signal congressional abrogation of tribal sovereign immunity, even in habeas cases." *Poodry v. Tonawanda Band of Seneca Indians*, 85 F.3d 874, 899-900 (2d Cir. 1996).

Here, Respondent Nooksack Indian Tribe has not expressly waived its tribal sovereign immunity and therefore is not a proper Respondent to Petitioner's habeas petition. Accordingly, the Court recommends that if this action is not dismissed for failure to exhaust, Respondent Nooksack Indian Tribe should be dismissed.

### 3. Nooksack Tribal Court

Respondent Nooksack Tribal Court argues that as an instrumentality of the Nooksack Indian Tribe, it is also entitled to tribal sovereign immunity. (Nooksack Tribal Return at 10.) In response, Petitioner argues that because the tribal court has an interest in opposing the petition if it lacks merit and has the power to give Petitioner the relief she seeks, it is a proper Respondent. (Pet.s Resp. at 12 (citing *Reimnitz v. State's Attorney of Cook Cty.*, 761 F.2d 405 (7th Cir. 1985)).)

Here, the Court finds the Nooksack Tribal Court is a governmental instrumentality of the Nooksack Indian Tribe and is therefore also entitled to tribal sovereign immunity. *Cook v. AVI Casino Enterprises, Inc*., 548 F.3d 718 (9th Cir. 2008) (immunity applies to the tribe's commercial as well as governmental activities) (*citing Kiowa Tribe of Oklahoma,* 523 U.S. at 754-55); *Pink v. Modoc Indian Health Project,* 157 F.3d 1185 (9th Cir. 1998), *cert. denied,* 528 U.S. 877 (1999) (nonprofit health corporation created and controlled by Indian tribe is entitled to

tribal immunity because it served as an arm of the sovereign tribes); *Hagen v. Sisseton–Wahpeton Community College,* 205 F.3d 1040, 1044 (8th Cir. 2000) (a tribe's sovereign immunity extends to its agencies). Although courts have been found to be proper respondents (*see Reimnitz*, 761 F.2 405; *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484 (1973)), the Court is unaware of any case holding a tribal court is a proper Respondent without waiver of tribal sovereign immunity. Further, although tribal officials can be proper respondents, the Nooksack Tribal Court as an entity itself is not a tribal official. *Santa Clara Pueblo*, 436 U.S. at 60 ("Congress clearly has power to authorize civil actions against *tribal officers,* and has done so with respect to habeas corpus relief in § 1303.") Accordingly, if this matter is not dismissed for failure to exhaust, the Court recommends the Nooksack Tribal Court be dismissed.

          4.      *Nooksack Tribal Court Clerks*

Respondents Nooksack Tribal Court clerks Betty Leathers and Deanna Francis argue they are improper Respondents because they do not exercise legal control over Petitioner's warrant. (Nooksack Tribe Return at 11.) Petitioner argues they may administer orders to bring Petitioner before the judge and are in control of Petitioner's $500.00 bail, and therefore have control over her "custody." [6] (Pet.'s Resp. at 12.)

The Court finds Respondents Leathers and Francis are not properly named Respondents. Respondents Leathers and Francis submitted evidence demonstrating their lack of legal authority under the Nooksack Tribal Code, Title 20, to quash or otherwise invalidate a bench warrant issued by the Nooksack Tribal Court. (Francis Decl. (Dkt. # 38-1) at ¶ 5, Exs. B, C (job

---

[6] Petitioner appears to acknowledge the named clerks are not the proper Respondents. (Pet.'s Resp. at 12-13 ("Ms. Adams stands by her decision to name each Respondent, but as long as one of the named Respondents possesses authority to release Ms. Adams from custody … it does not really matter to her. Thus, to the extent Respondents wish to dismiss those Respondents who truly lack authority … Ms. Adams does not object ….").)

REPORT AND RECOMMENDATION - 14

descriptions of Nooksack Tribal Court Clerks).) Based on the evidence submitted, the Court finds Respondents Leathers and Francis do not have legal authority to grant the relief Petitioner seeks. Accordingly, if this action is not dismissed for failure to exhaust, the Court recommends Respondents Leathers and Francis be dismissed.

          5.    *Judge Respondents*

Respondents Judge Dodge and Pro Tem Judge Majumdar argue that because they are judges, they are not proper Respondents. (Dodge and Majumdar Return at 9-10.) Specifically, they argue judges never have physical custody and control of a petitioner, and further cannot produce a petitioner in court, even one released on bail. (*Id.* at 9.) Petitioner argues that because Respondents Judge Dodge and Pro Tem Judge Majumdar possess the authority to modify the order regarding her bail, they are proper Respondents. (Pet.'s Resp. at 12.)

Here, it is not difficult to imagine that the presiding judge in the Nooksack Criminal Action could exercise control over Petitioner's warrant, such as modifying the bail order as suggested by Petitioner. Despite Respondents Judge Dodge and Pro Tem Judge Majumdar's assertion, they need not have physical custody of Petitioner, and in fact, could not exercise physical control as Petitioner is out on bond. Although it may be uncommon, tribal court judges have been found to be proper respondents. *See Coriz v. Rodriguez*, 350 F. Supp. 3d 1044, 1052 (D.N.M. 2018) (finding tribal court judge to be a proper respondent because the trial court record stated the petitioner was detained until his release was ordered by the governor or judge of the tribe). Accordingly, Respondent Pro Tem Judge Majumdar, as presiding judge over the Nooksack Criminal Action, is a proper Respondent.[7] However, the Court finds Respondents

---

[7] Respondent Judge Dodge recused himself from the Nooksack Criminal Action and appointed Pro Tem Judge Majumdar as the presiding judge. (Nooksack Tribe Return, Ex. A at 10-14 (Notice of Recusal).)

Judge Dodge and Pro Tem Judge Majumdar are also entitled to judicial immunity and should therefore be dismissed from this action, as discussed below.

       *a.*  *Judicial Immunity*

Respondents Judge Dodge and Pro Tem Judge Majumdar also assert they are entitled to judicial immunity. (Dodge and Majumdar Return at 10-11.) Judicial immunity completely shields a judicial officer from civil liability if the judicial officer acts within the scope of the officer's judicial authority. *Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978). There are two exceptions to judicial immunity: judicial capacity and absence of jurisdiction. The Court addresses each exception below.

       (1)  *Judicial Capacity*

Judges are accorded absolute immunity for actions taken in a judicial capacity. *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986) (en banc). When determining if an action is judicial, courts look to whether it is a function normally performed by a judge and to the expectations of the parties. *Stump*, 435 U.S. at 362; *Mireles v. Waco*, 502 U.S. 9, 12 (1991). The phrase "judicial capacity" has been interpreted broadly by the Supreme Court to include situations where judges are even alleged to have acted "maliciously and corruptly." *Mireles*, 502 U.S. at 11.

Here, the Court finds Respondent Judge Dodge acted in his judicial capacity when issuing Petitioner's bench warrant and related orders in the Nooksack Criminal Action. Issuing warrants and orders are normal, expected functions of a judge. Even if Respondent Judge Dodge

---

Thus, he no longer exercises control over Petitioner's warrant and is not a proper Respondent. The Court recommends he be dismissed from this action on this basis.

REPORT AND RECOMMENDATION - 16

issued the warrant maliciously or corruptly, as alleged by Petitioner, he would have still been acting in his judicial capacity.

Respondent Judge Dodge appointed Pro Tem Judge Majumdar as the presiding judge over the Nooksack Criminal Action after Petitioner's arrest. Petitioner has not asserted any allegations that he has acted outside his judicial capacity, however, to the extent he issues orders in the Nooksack Criminal Action, the Court finds these actions would similarly be performed in a judicial capacity.

*(2)   Clear Absence of Jurisdiction*

A judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction. *Stump*, 435 U.S. at 356-57. "[W]hen a judge knows that he lacks jurisdiction, or acts in the face of clearly valid statutes or case law expressly depriving him of jurisdiction, judicial immunity is lost." *Rankin v. Howard*, 633 F.2d 844, 849 (9th Cir. 1980) *overruled on other grounds by Ashelman*, 793 at 1072.

As discussed above, the Undersigned finds that the Nooksack Tribal Court did not plainly lack concurrent jurisdiction over the off-reservation allotted land at issue and thus finds Respondents Judge Dodge and Pro Tem Judge Majumdar did not act in the face of clearly valid statutes or case law that deprived the Nooksack Tribal Court of jurisdiction. Further, there is no evidence that Respondent Judge Dodge issued the warrant knowing he lacked jurisdiction. Accordingly, Respondents Judge Dodge and Pro Tem Judge Majumdar are entitled to judicial immunity and the Court recommends they be dismissed from this action.[8]

---

[8] Should the Court find that valid case law and/or statutes deprive the Nooksack Tribal Court's jurisdiction over the off-reservation allotted lands, Respondent Pro Tem Judge Majumdar would be the proper Respondent. As noted above, Respondent Judge Dodge is not a proper Respondent due to his recusal.

REPORT AND RECOMMENDATION - 17

## V. CONCLUSION

The Court recommends Petitioner's habeas petition be dismissed without prejudice for failure to exhaust tribal court remedies. Alternatively, the Court recommends Respondents Nooksack Indian Tribe, Nooksack Tribal Court, Leathers, Francis, and Judge Dodge be dismissed as improperly named Respondents, and that Respondent Pro Tem Judge Majumdar be dismissed due to judicial immunity. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **August 7, 2020**.

The Clerk is directed to send copies of this Report and Recommendation to the parties and to the Honorable John C. Coughenour.

Dated this 13th day of July, 2020.

MICHELLE L. PETERSON
United States Magistrate Judge