UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ELILE ADAMS,

                Petitioner,

     v.

BILL ELFO, *et al.*,

                Respondents.

Case No. C19-1263 JCC-MLP

REPORT AND RECOMMENDATION

## I.    INTRODUCTION

This matter is before the Court on remand from the Honorable John C. Coughenour for consideration of whether the fact that Public Law 280 ("P.L. 280") predates federal recognition of the Nooksack Tribe impacts the Court's determination that the Nooksack Tribal Court did not plainly lack jurisdiction over the Suchanon allotment at the time of Petitioner's arrest. (Order (Dkt. # 62).) Having considered the parties' submissions, the balance of the record, and the governing law, the Court recommends Petitioner's habeas petition be DISMISSED.

# I. BACKGROUND

## A. Procedural Background

Petitioner Elile Adams filed a petition for writ of habeas corpus pursuant to the federal Indian Civil Rights Act of 1968 ("ICRA"), 25 U.S.C. §§ 1301-1303, seeking relief from a Nooksack Tribal Court warrant. (Second Am. Pet. (Dkt. # 21).) Petitioner names Respondents Deanna Francis, Betty Leather, Nooksack Indian Tribe, and Nooksack Tribal Court ("Nooksack Tribe Respondents"), and Nooksack Tribal Judges Raymond Dodge and Pro Tem Judge Rajeev Majumdar ("Judge Respondents") in her petition. (*Id.*) Respondents moved to dismiss the petition, arguing that Petitioner failed to exhaust tribal court remedies and named improper respondents, that the Nooksack Tribe Respondents are entitled to sovereign immunity, and that the Judge Respondents are improper respondents and entitled to judicial immunity. (*See* Dkt. ## 25, 28.)

The Undersigned issued a Report and Recommendation recommending dismissal of Petitioner's habeas petition because she did not exhaust her tribal court remedies. (Dkt. # 35.) Petitioner submitted a motion for reconsideration, construed by the Court as objections to the Report and Recommendation, arguing, *inter alia*, that exhaustion would be futile because Respondents lacked jurisdiction over the Suchanon allotment where she was arrested, and that Respondents acted in bad faith. (Dkt. # 36.) Petitioner also submitted new evidence with her objections that the Court considered. (Dkt. # 43 at 3.) The Court overruled Petitioner's objections regarding bad faith and remanded the matter to determine whether the Nooksack Tribal Court lacked jurisdiction over Petitioner at the time of her arrest on allotted land outside of the reservation and to consider Respondents' alternative grounds for dismissal. (*Id.* at 4-5.)

1     The Undersigned issued a second Report and Recommendation. (Dkt. # 45.) The
2 Undersigned found that while it is clear from the case law that the State has jurisdiction over the
3 disputed off-reservation allotted lands, the Undersigned could not conclude that it is clear there is
4 no concurrent tribal jurisdiction. (*Id.*) The Undersigned thus found that tribal jurisdiction was not
5 plainly lacking and that Petitioner had failed to exhaust her tribal court remedies, and therefore
6 recommended dismissal. (*Id.*) The Undersigned further recommended dismissal based on
7 Respondents' various alternative grounds for dismissal. (*Id.*)

8     Petitioner filed objections to the Report and Recommendation and a supplement to her
9 objections. (Dkt. # 46, 48.) Petitioner argued the Report and Recommendation erred, *inter alia*,
10 in finding the Nooksack Tribal Court did not plainly lack jurisdiction over Petitioner. (Dkt. # 46.)
11 The Court found authority regarding tribal jurisdiction is mixed, and that because P.L. 280 is not
12 a divestiture statute, "reason dictates that a tribe's jurisdictional rights to trust lands before Public
13 Law 280 would, indeed, survive Public Law 280." (Dkt. # 54 at 3-4.) The Court therefore
14 adopted the Report and Recommendation and dismissed Petitioner's habeas petition.[1] (*Id.*)

15    Petitioner filed a motion for reconsideration, arguing the Court committed manifest error
16 by concluding that the Nooksack Tribe's jurisdictional rights to allotted lands before P.L. 280
17 would survive P.L. 280 and that the Court overlooked Petitioner's objection that the bad faith
18 exception to exhaustion applied. (Dkt. # 56.) The Court ordered the Nooksack Tribe Respondents
19 to respond to Petitioner's motion for reconsideration. (Dkt. # 59.) The Nooksack Tribe

---

[1] In adopting the Undersigned's second Report and Recommendation, the Court found the issue of jurisdiction was far from plain and therefore concluded Petitioner was not excused from exhausting her tribal court remedies. (Dkt. # 54.) The Court's order does not directly address the Report and Recommendation's findings regarding Respondents' alternative grounds for dismissal. For the reasons previously discussed (dkt. # 45 at 12-17), the Undersigned recommends Respondents Nooksack Indian Tribe, Nooksack Tribal Court, Leathers, Francis, and Judge Dodge be alternatively dismissed as improperly named respondents and that Respondent Pro Tem Judge Majumdar be dismissed due to judicial immunity.

REPORT AND RECOMMENDATION - 3

responded, arguing Petitioner had not demonstrated bad faith. (Dkt. # 60.) They did not address Petitioner's jurisdictional claims. (*Id.*)

The Court granted in part and denied in part Petitioner's motion for reconsideration, and remanded the case to the Undersigned to address the limited question of whether "the fact that Public Law 280 predates federal recognition of the Nooksack Tribe impacts its determination that the Nooksack Tribal Court did not plainly lack jurisdiction over the Suchanon allotment at the time of Ms. Adams' arrest." (Dkt. # 62 at 2.)

On remand, the Undersigned issued an order directing the parties to submit briefing regarding the jurisdictional issue, and whether it should be certified to the Washington State Supreme Court. (Dkt. # 64.) The parties timely submitted their briefing, and all parties argued the question should not be certified to the Washington State Supreme Court. (Dkt. ## 65 (Nooksack Resp.), 66 (Judge Resp.), 67 (Pet.'s Resp).)

### B. Factual Background

The full set of facts regarding this matter are set forth in the previous Reports and Recommendations. (Dkt. ## 35, 45.) Below is a summary of the facts relevant to the limited question now before the Court.

After conducting an investigation, Nooksack Tribal law enforcement cited Petitioner with ten counts of interference with child custody for failing to comply with a Nooksack Tribal Court Parenting Plan. (Nooksack Tribe Return (Dkt. # 25), Ex. A at 57 (Tribal Police Report), 62 (Police Citation).) As a result, the Nooksack Tribal Court charged Petitioner with four counts of custody interference and one count of contempt of court. (*Id.*, Ex. A at 59-61 (Criminal Complaint).) On July 11, 2019, Petitioner failed to appear at a scheduled hearing. (*Id.*, Ex. A at 41 (Minute Order).) After failing to execute a promise to appear for the next hearing, the

Nooksack Tribal Court issued a warrant for her arrest. (*Id.*, Ex. A at 25-26 (Notice of Return on Arrest Warrant), 41 (Minute Order).)

On July 30, 2019, Nooksack Tribal Police arrested Petitioner at her residence pursuant to the warrant and booked her into the Whatcom County Jail. (Nooksack Tribe Return, Ex. A at 29-31 (Police Report); Whatcom County Deputy Sheriff Wendy Jones Decl. (Dkt. # 14) at ¶ 2.) Authorities released Petitioner after she posted bail of $500.00. (Nooksack Tribe Return, Ex. A. at 23 (Whatcom County Jail Bail Receipt).) The Whatcom County Jail subsequently transferred Petitioner's bail to the Nooksack Tribal Court. (*Id.*, Ex. A at 22 (Whatcom County check to Nooksack Tribal Court).) It appears Petitioner has remained out of custody since her release. (Whatcom County Deputy Sheriff Wendy Jones Decl. at ¶ 7.)

## II.   DISCUSSION

### A.   Habeas Corpus Legal Standards

Habeas corpus provides the exclusive remedy for tribal members by which enforcement of the ICRA can be obtained in federal court. *See Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 66 (1978); 25 U.S.C. § 1303 ("The privilege of the writ of habeas corpus shall be available to any person, in a court of the United States, to test the legality of his detention by order of an Indian tribe."). Individuals generally are required to exhaust their claims with the appropriate tribal court before turning to federal court. *See, e.g.*, *Selam v. Warm Springs Tribal Corr. Facility*, 134 F.3d 948, 953 (9th Cir. 1998). Considerations of comity, along with the desire to avoid procedural nightmares, have prompted the Supreme Court to insist that "the federal court stay[ ] its hand until after the Tribal Court has had a full opportunity … to rectify any errors it may have made." *Nat'l Farmers Union Ins. Cos. v. Crow Tribe*, 471 U.S. 845, 857 (1985). Exhaustion is not "required where an assertion of tribal jurisdiction is motivated by a desire to

1  harass or is conducted in bad faith, … or where the action is patently violative of express

2  jurisdictional prohibitions, or where exhaustion would be futile because of the lack of an

3  adequate opportunity to challenge the court's jurisdiction." *Id.* at 857 n.21.

      **B.**     **Public Law 280**

      As noted above, this matter is before the Undersigned on the question of whether the Nooksack Indian Tribe plainly lacked criminal jurisdiction over off-reservation allotted lands. The Undersigned has already addressed Petitioner's previously asserted jurisdictional arguments. Specifically, the Undersigned found that while the case law cited by Petitioner found the State has criminal jurisdiction over off-reservation allotted lands, the cases do not address whether the State has exclusive jurisdiction over those lands or whether tribes have concurrent jurisdiction. (Dkt. # 45 at 8-10 (addressing *State v. Cooper*, 130 Wash.2d 770 (1996), *State v. Clark*, 178 Wash.2d 19 (2013), and *State v. Comenout*, 173 Wash.2d 235 (2011)).) The Undersigned also found Petitioner's reliance on AGO 63-64 No. 68, an Attorney General opinion that opined the State has exclusive jurisdiction over allotted lands, is unpersuasive as courts are not bound by Attorney General opinions. (Dkt. # 45. at 10-11.) The narrow question before the Undersigned is whether the Nooksack Indian Tribe plainly lacked jurisdiction over the Suchanon allotment because P.L. 280 pre-existed the recognition of the Tribe.

      The Undersigned previously outlined a brief history of P.L. 280 and provides the same overview in this Report and Recommendation. In 1953, Congress enacted P.L. 280 to permit states to assume jurisdiction over Indian Country.[2] 4 Pub.L. No. 280, 67 Stat. 588 (codified as

---

[2] 18 U.S.C. § 1151 defines Indian Country for purposes of federal jurisdiction: "'Indian country', as used in this chapter, means (a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United

1   amended at 18 U.S.C. § 1162; 25 U.S.C. §§ 1321-1326; 28 U.S.C. § 1360) (1953). P.L. 280 gave

2   Washington consent to assume this jurisdiction by statute and/or amendment of its state

3   constitution. *Washington v. Confederated Bands & Tribes of Yakima Indian Nation,* 439 U.S.

4   463, 471-74 (1979); *In re Estate of Cross,* 126 Wash.2d 43, 47 (1995).

In 1963, Washington amended RCW 37.12 to assert civil and criminal jurisdiction over Indian Country, with exceptions. RCW 37.12.010 provides:

> The State of Washington hereby obligates and binds itself to assume criminal and civil jurisdiction over Indians and Indian territory, reservations, country, and lands within this state in accordance with [Public Law 280], but such assumption of jurisdiction shall not apply to Indians when on their tribal lands or allotted lands within an established Indian reservation and held in trust by the United States or subject to a restriction against alienation imposed by the United States, unless the provisions of RCW 37.12.021 have been invoked except for the following:
>
> (1) Compulsory school attendance;
>
> (2) Public assistance;
>
> (3) Domestic relations;
>
> (4) Mental illness;
>
> (5) Juvenile delinquency;
>
> (6) Adoption proceedings;
>
> (7) Dependent children; and
>
> (8) Operation of motor vehicles upon the public streets, alleys, roads and highways: PROVIDED FURTHER, That Indian tribes that petitioned for, were granted and became subject to state jurisdiction pursuant to this chapter on or before March 13, 1963 shall remain subject to state civil and criminal jurisdiction as if *chapter 36, Laws of 1963 had not been enacted.

---

States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same."

REPORT AND RECOMMENDATION - 7

In 1973, the United States recognized the Nooksack Indian Tribe. *Cooper*, 130 Wash.2d at 775 n.5.

Petitioner continues to assert the State, not the Nooksack Indian Tribe, has criminal jurisdiction over off-reservation allotted lands, and therefore the Nooksack Indian Tribe lacked jurisdiction to arrest Petitioner. Petitioner asserts P.L. 280 was meant to confer State jurisdiction over criminal offenses committed in Indian Country, and that in 1963, the State assumed full and complete nonconsensual criminal jurisdiction over Indian Country outside of reservations. (Dkt. # 56; Pet.'s Resp. at 1-2 (citing *Cooper*; *Washington v. Confederated Bands & Tribes of Yakima Indian Nation*, 439 U.S. 463 (1979)).) Petitioner argues this constitutes exclusive State criminal jurisdiction over allotted lands, including the Suchanon allotment. (*Id.*) Petitioner further argues that because the Nooksack Indian Tribe lacked jurisdiction to divest in 1963, prior to the Tribe's recognition, the State continued to exercise exclusive jurisdiction over allotted lands when the United States recognized the Nooksack Indian Tribe in 1973. (*Id.* at 2-3.) In support of her argument, Petitioner asserts P.L. 280 does not include an exemption for the Suchanon allotment, as Congress has done in other instances. (*Id.* at 3.) Petitioner directs the Court to Congress' 1970 amendment of P.L. 280, P.L. 91-523, that excepted the Metlakatla Indian Community from the State of Alaska's exclusive criminal jurisdiction. (*Id.*) Petitioner argues that because no exemption has been made for the Suchanon allotment, pre-recognition of exclusive State jurisdiction must be assumed. (*Id.*)

Both the Nooksack Tribe Respondents and Judge Respondents argue P.L. 280 is not a divestiture statute, and therefore did not divest the Nooksack Indian Tribe of concurrent criminal jurisdiction. (Judge Resp. at 2-5; Nooksack Resp. at 2-3.) The Nooksack Tribe Respondents argue that regardless of when a tribe is federally recognized, P.L. 280's purpose is to strengthen

law enforcement in Indian Country, and that because it does not address tribal jurisdiction, it does not affect tribal jurisdiction. (Nooksack Resp. at 2-3.) In support of their argument, they cite *State v. Schmuck*, 121 Wash.2d 373 (1993). (*Id.* at 3-4.) In *Schmuck*, the court found RCW 37.12.010, enacted pursuant to P.L. 280, did not divest the Suquamish Indian Tribe of its inherent authority to stop and detain a non-Indian on a public road in the tribe's reservation. 121 Wash.2d at 396. The Nooksack Tribe Respondents assert that because P.L. 280 does not divest tribal jurisdiction over non-Indians, it does not divest tribal jurisdiction over tribal members such as Petitioner who was a Nooksack Indian Tribe member at the time of her arrest. (Nooksack Resp. at 4-5.) The Nooksack Tribe Respondents argue that because *Cooper*, decided after *Schmuck*, did not hold that the State had exclusive jurisdiction over off-reservation tribal land, the case law is clear that both the State and tribes have jurisdiction on off-reservation lands unless it has been retroceded. (*Id.* at 5.)

Judge Respondents assert concurrent tribal jurisdiction over off-reservation allotted lands exists because Congress did not include any language in P.L. 280 that the State has exclusive jurisdiction. (Judge Resp. at 2-3.) They assert that when P.L. 280 passed, its language sought to "remove any legal impediment to the assumption of civil and criminal jurisdiction" and said nothing regarding precluding tribal jurisdiction. (*Id.* at 2-5.) Judge Respondents also note that in 1957, the State enacted law allowing it to assume jurisdiction over Indian Country but only with a tribe's authorization. (*Id.* at 3 (citing *Arquette v. Schneckloth*, 56 Wash.2d 178 (1960); RCW 37.12).) They assert this law demonstrates legislative intent for tribes to retain jurisdiction over Indian Country unless they authorize State jurisdiction. (*Id.*) They further assert that when the State amended RCW 37.12.010 in 1963, the State had the opportunity to include language regarding exclusive State jurisdiction or lack of concurrent tribal jurisdiction but did not include

any such language, further indicating a lack of intent to divest tribes of their jurisdiction. (*Id.* at 3-4.) Judge Respondents similarly assert that a subsequent 1968 amendment to P.L. 280 allowed State jurisdiction in Indian Country only when tribes have consented to State jurisdiction, and that the amendment omitted any language regarding exclusive State jurisdiction. (*Id.* at 4-5.) Lastly, Judge Respondents argue courts have previously held that P.L. 280 does not divest tribal courts of jurisdiction, citing *Schmuck*. (*Id.* at 5-6.)

Here, the question before the Court is whether the Nooksack Tribal Court plainly lacked jurisdiction over the Suchanon allotment at the time of Petitioner's arrest. As discussed above, Petitioner directs the Court to authority establishing that the State has jurisdiction on off-reservation allotted lands, however, the authority does not address whether that jurisdiction is exclusive or if tribes have concurrent jurisdiction. Further, the Court is not bound by AGO 63-64 No. 68. *Skagit County Pub. Hosp. Dist. No. 304 v. Skagit County Pub. Hosp. Dist. No. 1*, 177 Wash.2d 718, 725 (2013); *Cedar Shake and Shingle Bureau v. City of Los Angeles,* 997 F.2d 620, 625 (9th Cir. 1993). Neither Petitioner nor Respondents have cited authority directly on point regarding tribal jurisdiction on the off-reservation allotted lands, and the Undersigned is aware of none.

For purposes of determining whether exhaustion is required in the instant habeas matter, the Undersigned again finds that the Nooksack Indian Tribe did not plainly lack jurisdiction over the allotted lands. Nothing in the language of P.L. 280, RCW 37.12, or any relevant amendments appears to have divested the Nooksack Indian Tribe of concurrent jurisdiction. Had Congress or the State intended to divest jurisdiction of tribes federally recognized after the enactment of P.L. 280, they could have included language reflecting that intent, but did not. While some authority cited by Petitioner may suggest the State has exclusive jurisdiction, the Undersigned cannot find

that tribal jurisdiction was plainly lacking as to make exhaustion unnecessary for habeas purposes. That this jurisdictional issue is still before the Court after several motions for reconsideration and supplemental briefing supports the finding that tribal jurisdiction was not *plainly* lacking. As previously stated, Petitioner requests the federal court insert itself into the Nooksack Tribal Court's criminal system and find it lacks jurisdiction over off-reservation allotted lands. (Dkt. # 45 at 11.) The Undersigned finds that in the interest of comity, this matter should be dismissed, and the tribal court be allowed to consider the question of tribal jurisdiction and rectify any errors it may have made before the federal court takes action.

For the reasons discussed in previous Reports and Recommendations, and the reasons discussed above, the Court recommends dismissing Petitioner's petition without prejudice for failure to exhaust her tribal court remedies.

### III. CONCLUSION

The Court recommends Petitioner's habeas petition and this action be DISMISSED without prejudice. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **May 7, 2021.**

The Clerk is directed to send copies of this Report and Recommendation to the parties and to the Honorable John C. Coughenour.

Dated this 12th day of April, 2021.

MICHELLE L. PETERSON
United States Magistrate Judge

REPORT AND RECOMMENDATION - 12